UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA L. HOFFMAN,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                /

Case No. 4:06-cv-68
Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

        Plaintiff was born on January 25, 1964 and earned a GED (AR 78, 109).[1] Plaintiff alleges that she has been disabled since August 4, 2000 (AR 78). She had previous employment as a dietary aide in a nursing home, restaurant hostess, laborer, cashier and nurse's aide (AR 104). Plaintiff identified her disabling conditions as degenerative arthritis in both knees, and severe pain in the left elbow and shoulder (AR 103). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on August 29, 2003 (AR 39-49). The Appeals Council remanded the matter to the ALJ to develop the record with respect to mental impairments, specifically a severe impairment of depression (AR 70-71). On remand, the ALJ denied plaintiff's claim in a decision entered September

---

[1] Citations to the administrative record will be referenced as (AR "page #").

20, 2005 (AR 16-28). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 27). Second, the ALJ found that she suffered from severe impairments of migraines; degenerative joint disease of both knees, left elbow, and shoulders; bipolar disorder; depression; and panic disorder with agoraphobia (AR 27). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 27).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) as follows:

> claimant can preform sedentary work with a sit/stand option every 30 to 60 minutes. She cannot use foot controls, climb, and only occasionally bend. Claimant is limited to unskilled work that does not involve dealing with the public.

(AR 27).

The ALJ found that plaintiff could not perform any of her past relevant work (AR 27). The ALJ also found that plaintiff's allegations of regarding her limitations are not totally credible (AR 27).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a significant range of sedentary work (AR 28). The ALJ found that there are a significant number of jobs in Michigan that plaintiff can perform, such as: production inspector (2,175 jobs); sorter/packer (1,025 jobs); monitor (1,250 jobs); and office clerk (9,475 jobs) (AR 26-28). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 28).

**III. ANALYSIS**

Plaintiff raised two issues on appeal.

**A.    Whether the court should vacate the Commissioner's decision and remand the action back to the Commissioner's Office of Disability and Adjudication and Review, when the Commissioner's ALJ did not make a record-based finding relating to Ms. Hoffman's credibility, and when that issue of credibility is determinative of whether Ms. Hoffman's claim is denied or granted?**

The ALJ summarized his credibility findings by stating that "[t]he undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision" (AR 27). Plaintiff contends that the ALJ's decision does not include any reasons for finding that she was not credible, and that the decision is "bereft" of an inquiry regarding her credibility. The court agrees.

It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

The regulations list seven factors to be used by the Commissioner in assessing the credibility of an individual's statements regarding symptoms and pain. These factors are: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other

5

symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and, other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

The ALJ found that plaintiff suffered from severe impairments of migraines and degenerative joint disease of both knees. Plaintiff testified that she needed to elevate her legs (AR 579-81) and that she suffered from severe migraines that lasted as long as three days (AR 583). While the vocational expert (VE) identified some 13,925 jobs that plaintiff could perform (AR 598), the VE testified that some or all of those jobs would be precluded if her testimony was deemed credible:

> ALJ: Now if I ask you to assume that I found the Claimant's testimony today to be credible and supported by the medical evidence, in your opinion, could such a person perform these sedentary jobs on a full-time basis?
>
> VE: May be capable of performing the jobs. But may have a hard time maintaining competitive employment due to the migraines which she said occurred every month or so, but last for several days at a time, and which require that she essentially isolate in a a dark room to relieve the discomfort. She also testified to a need to lie down or nap during the workday, which would preclude her regular attendance at the job site.
>
> ALJ: And I assume if the elevation -- the issue of elevating the legs was beyond that hip level that you described, that would be work preclusive?
>
> VE: Yes, Your Honor.

(AR 599).

The ALJ did not explicitly address plaintiff's claim regarding the need to elevate her legs or the severity of her migraine headaches. Rather, the ALJ made only the general statement that

plaintiff's allegations regarding her limitations were not entirely credible. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

The Social Security Administration recognized the need for articulation of reasons for discounting a claimant's credibility in SSR 96-7p, which provides in pertinent part:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

The court cannot trace the ALJ's reasoning with respect to plaintiff's credibility. If plaintiff's testimony regarding the need to elevate her legs or the extent of her migraine headaches is credible, then she would be precluded from performing some or all of the jobs identified by the VE.

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. 405(g). On remand, the Commissioner should re-evaluate plaintiff's credibility, specifically with respect to her claims regarding the need to elevate her legs and the extent of her migraine headaches. If the Commissioner finds these claims credible, the he should also re-evaluate the vocational evidence.

>   **B.      Whether the court should vacate the Commissioner's decision and remand the action back to the Commissioner's Office of Disability and Adjudication and Review, when the Commissioner's ALJ failed to explain why he chose lesser qualified expert opinion over that of more highly qualified expert opinion, the latter by both consultant and at least one treater?**

Next, plaintiff contends that the ALJ adopted the opinions of a less qualified consultant over the opinions of more qualified consultants and treaters. Specifically, plaintiff contends that the ALJ gave more weight the opinion of a limited licensed psychologist, Mr. Berghuis, over the opinions of three physicians, L'Tanya Haith, M.D., Ravinder P. Mediratta, M.D., and Ravinder K. Sharma, M.D. Plaintiff's Brief at 15.

As an initial matter, plaintiff's characterization of the underlying facts is incorrect. Mr. Berghuis' psychological report was co-signed by a licensed psychologist, Arthur E. Jongsma, Ph. D. (AR 434-38). A licensed psychologist, like a licensed physician, is an acceptable medical source for purposes of establishing disability. *See* 20 C.F.R. § 404.1513(a). In addition, contrary to plaintiff's assertion, the ALJ adopted both the Berghuis/Jongsma report and Dr. Haith's reports (AR 24, 469-73). Nevertheless, the court concludes that this matter should be remanded to the Commissioner for re-evaluation of plaintiff's psychological limitations on other grounds.

The Berghuis/Jongsma report arose from an examination of plaintiff on October 20, 2004, which found that plaintiff suffered from: bipolar II disorder, depressed, mild; panic disorder with agoraphobia; and obsessive-compulsive disorder (AR 437). Dr. Haith treated plaintiff three times in June, July and September 2004, and diagnosed her as suffering from: bipolar type II disorder, by history; and, polysubstance dependence (AR 469-73).

After adopting these opinions, the ALJ followed the special procedure or "special technique" for evaluating the severity of plaintiff's mental impairments. *See* 20 C.F.R. § 404.1520a. This technique has been summarized as follows:

> The technique is designed to help "(1) identify the need for additional evidence to determine impairment severity; (2) consider and evaluate functional consequences of mental [impairment] relevant to [a claimant's] ability to work; and (3) organize and present [the Agency's] findings in a clear, concise, and consistent manner." 20 C.F.R. § 404.1520a(a). When applying the technique, the ALJ is first supposed to evaluate whether plaintiff has any medically determinable mental impairments. 20 C.F.R. § 404.1520a(b). Where such an impairment is found, the ALJ is required to document the symptoms, signs, and laboratory findings that substantiate the presence of and rate the degree of functional limitation caused by any impairments. *Id.* Functional limitations are rated in four broad areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3) (citing section 12.00C of the Listing). These ratings are followed by a determination regarding the severity of any mental impairment. 20 C.F.R. § 404.1520a(d). Where severity is found, the ALJ must assess whether the mental impairment in question meets or is equivalent to any mental disorder in the Listing. *Id.* If a mental impairment is severe but fails to meet or equal any listing, the ALJ considers plaintiff's RFC. *Id.*
>
> The ALJ must incorporate any pertinent findings and conclusions based on the special technique in his written decision. 20 C.F.R. § 404.1520a(e)(2). The decision should also discuss what evidence the ALJ considered in reaching his conclusion about severity of any mental impairment as well as specific findings regarding the degree of limitation found in each of the four broad functional areas. *Id.*

*Stemple v. Astrue*, -- F. Supp. 2d --, 2007 WL 601566 at *13 fn. 34 (D. Md. Feb. 26, 2007).

Here, the ALJ found that plaintiff did not meet the "B" criteria in the Psychiatric Review Technique form ("PRTF"), because she had only moderate restrictions of her activities of daily living and social functioning, moderate deficiencies of concentration, persistence and pace, and no evidence that she experienced an episode of decompensation, and no presence of the "C" criteria (AR 25).

The administrative record also includes PRTF forms completed by Drs. Mediratta and Sharma. However, the ALJ rejected these apparently because they were based upon a single examination of plaintiff (AR 24). On June 2, 2003, Dr. Mediratta found that plaintiff suffered from affective disorders (Listing 12.04) (AR 422). In evaluating this condition, Dr. Mediratta found that plaintiff met the "B" criteria of that listing, because she had marked restrictions of her activities of daily living and social functioning, often suffered from deficiencies of concentration, persistence and pace, and had continual episodes of decompensation (AR 429). On June 13, 2005, Dr. Sharma found that she suffered from affective disorders (listing 12.04), anxiety related disorders (listing 12.06) and substance addiction disorders (listing 12.09) (AR 512).[2] Dr. Sharma's PRTF found that plaintiff met the "B" criteria for listings 12.04, 12.06, and 12.09 because she had marked restrictions of her activities of daily living and repeated episodes of decompensation (AR 519).[3] In addition, Dr. Sharma found that plaintiff met the "C" criteria of listing 12.06 (AR 520).[4]

Based on this record, the court concludes that the ALJ should re-evaluate plaintiff's mental impairment.

First, the ALJ gave little weight to the opinions of Drs. Mediratta and Sharma, because the opinions were based upon a single examination of plaintiff (AR 24). It appears to the

---

[2] The court notes that the administrative record index identifies this PRTF as "completed by DDS physician" (AR 5). However, Dr. Sharma's report is addressed to plaintiff's counsel rather than a governmental agency.

[3] Dr. Sharma apparently found that plaintiff suffered from listing 12.06, but appears to have omitted filling in a portion of the form for that listing (AR 516). In addition, while Dr. Sharma did not identify plaintiff as suffering from listing 12.08 (personality disorders) on the first page of the form, he identified some of the traits of that listing on the sixth page (AR 512, 517).

[4] Dr. Sharma may have found that plaintiff met the requirements of listing 12.04. However, this is unclear, because he used the pre-printed form for listing 12.03 (schizophrenia, paranoid and other psychotic disorders) rather than listing 12.04 (affective disorders).

court that the same line of reasoning should apply to the Berghuis/Jongsma report, which was also based upon a single examination. Under these circumstances, the ALJ's reason for giving the reports of Drs. Mediratta and Sharma little weight is not supported by substantial evidence.[5]

Second, the ALJ did not clearly state his findings under the special technique for evaluating the severity of plaintiff's mental impairments. *See* 20 C.F.R. § 404.1520a. The administrative record reflects that plaintiff was diagnosed as suffering from: bipolar II disorder; panic disorder with agoraphobia; obsessive-compulsive disorder; polysubstance dependence; affective disorders; anxiety related disorders; and, substance addiction disorders. Out of these diagnoses, the ALJ found that plaintiff suffered from severe impairments of bipolar disorder; depression; and panic disorder with agoraphobia (AR 27).

The regulations require the ALJ to discuss specific listed mental disorders when evaluating a claimant's alleged mental impairment. The regulation regarding "[e]valuation of mental impairments," 20 C.F.R. § 404.1520a, provides in pertinent part as follows:

> (d)(2)  If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitations to the criteria of the appropriate listed mental disorder. . . .
>
> (d)(3)  If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.

While the ALJ made findings with respect to the four functional limitations, i.e., the "B" criteria, he did not link those findings to a listed mental disorder. In addition, the ALJ's blanket

---

[5] The court notes that Dr. Haith is the only mental health professional to examine plaintiff more than once.

statement that "[t]he evidence does not establish the presence of the 'C' criteria" does not assist the court's review of this matter, because the ALJ failed to link the "C" criteria to any particular listed disorder. Unlike the "B" criteria, the "C" criteria are additional functional criteria that apply only to listings 12.02, 12.03, 12.04 and 12.06. *See* 20 C.F.R., pt. 404, subpt. P, app. 1, listing 12.00A. In summary, because the ALJ did not discuss plaintiff's severe impairments in terms of the listings for specific mental disorders, the ALJ's application of the special technique is not sufficiently detailed to allow this court to trace the path of his reasoning. *Diaz*, 55 F.3d at 307.

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. se 405(g). On remand, the ALJ should articulate his reasons for rejecting the opinions expressed by Drs. Mediratta and Sharma on a basis other than the fact that these physicians examined plaintiff on a single occasion. In addition, the ALJ should identify plaintiff's severe impairments with the appropriate listings and link his findings with respect to the "B" and "C" criteria applicable to those listings.

**IV.    Recommendation**

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for .

Dated:  June 11, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                   Hugh W. Brenneman, Jr.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).